UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ROBERT MILTON,

                              Plaintiff,

-against-

CORRECTIONAL OFFICER SAAD REHMAN,
CORRECTIONAL OFFICER PASKO DELOVIC,
CORRECTIONAL OFFICER LEON LOWE and
SERGEANT THEODORE BROOKS,

                              Defendants.

Case No. 1:19-cv-02770 (JLR)

**<u>OPINION AND ORDER</u>**

---

JENNIFER L. ROCHON, United States District Judge:

This case arises from a prison transport on February 17, 2017.  Plaintiff Robert Milton

("Plaintiff" or "Milton") brings claims pursuant to 42 U.S.C. § 1983 against Defendants

Correctional Officer Saad Rehman ("Rehman"), Correctional Officer Pasko Delovic

("Delovic"), Correctional Officer Leon Lowe ("Lowe"), and Sergeant Theodore Brooks

("Brooks") (collectively, "Defendants") for excessive force, failure to intervene to prevent

excessive force, and deliberate indifference to Plaintiff's medical needs, in violation of his

Eighth Amendment rights.  Dkt. 40 ("SAC").  Following discovery, Defendants moved for

summary judgment, Dkt. 170, and Plaintiff moved for spoliation sanctions, Dkt. 210.  Now

before the Court are Defendants' objections to the Report and Recommendation (the "R&R")

of Magistrate Judge Wang recommending that Defendants' motion be denied and that

Plaintiff's motion be granted in part and denied in part.  Dkt. 219 ("R&R").  For the reasons

stated herein, the Court adopts Magistrate Judge Wang's R&R, DENIES Defendants' motion

for summary judgment, and GRANTS in part and DENIES in part Plaintiff's motion for

sanctions.

**BACKGROUND**

The Court incorporates the portion of the R&R that describes the background of the case.  *See* R&R at 1-10.  Except where noted, the following facts are undisputed and drawn from the R&R, the parties' Rule 56.1 Statements and Responses, *see* Dkt. 171 ("Df. SUF"); Dkt. 190 ("Pl. SUF"); Dkt. 196 ("Df. RSUF"), and the declarations of Rehman, Delovic, Lowe, and Amelia T.R. Starr and the exhibits attached thereto, *see* Dkt. 173 ("Rehman Decl."); Dkts. 173-1 to 173-3; Dkt. 174 ("Delovic Decl."); Dkts. 174-1 to 174-2; Dkt. 176 ("Lowe Decl."); Dkt. 191 ("Starr Decl."); Dkts. 191-1 to 191-31.  The following summary focuses on the facts necessary to evaluate the issues presented.

**I.    Factual Background**

Plaintiff is currently incarcerated by the New York State Department of Corrections and Community Supervision ("DOCCS") at Wallkill Correctional Facility.  Pl. SUF ¶ 1.  Rehman, Delovic, Lowe, and Brooks were employed at Sing Sing Correctional Facility ("Sing Sing") at the time of the transport that is at issue in this case.  Pl. SUF ¶¶ 5-8.  At the time of the incident, Plaintiff was being held at a federal detention center, the Metropolitan Correctional Center (the "MCC").  R&R at 3; Pl. SUF ¶ 2.  Plaintiff suffers from claustrophobia and anxiety, formally diagnosed as a "panic disorder."  R&R at 2.  According to Plaintiff, the condition "is triggered when he is placed in restraints and confined to enclosed areas," like a transport van.  R&R at 2.  Plaintiff's DOCCS records reflect that he has an "extensive history" of refusing medical trips due to his claustrophobia "and that prior to the incident, medical staff at DOCCS had ordered that Plaintiff be provided with a sedative before going on any outside medical trip."  R&R at 2 (internal quotation marks omitted).

On February 17, 2017, Plaintiff was scheduled to be transferred from the MCC to Sing Sing.  R&R at 3; Pl. SUF ¶ 2.  Rehman and Delovic arrived at the MCC in the late afternoon

or early evening to facilitate the transport.  R&R at 3.  Plaintiff was initially calm while Rehman and Delovic strip-frisked him and had him change into a Sing Sing uniform.  R&R at 3.  The parties disagree about what happened next: Plaintiff claims he told Rehman and Delovic "that he had claustrophobia and could not travel without medication" and asked them not to handcuff him too tightly; Rehman then handcuffed him.  R&R at 3.  Plaintiff asked "Yo, where's my medication?" and "refused to allow the application of further restraints." R&R at 3 (quoting Dkt. 192-2 ("Pl. Dep.") at 39:22).  Defendants, however, contend that Plaintiff never told Rehman and Delovic that he suffered from claustrophobia or needed medication, and they thought that when he began resisting, he was refusing to comply with lawful direction in response to being informed that he could not bring his wristwatch with him.  R&R at 4.  Plaintiff testified that after he told Rehman and Delovic that he needed medication, they left the room and Lieutenant Holly, a nonparty MCC officer, came to the door and asked what the problem was.  Pl. Dep. at 57:24-58:13.  Plaintiff told him he needed medication.  Pl. Dep. at 58:13-23.  According to Plaintiff, Holly said "hold on a minute," closed the door, went somewhere, and then came back and told Plaintiff, "I don't know what it is, but they [are] telling me that you have to get the restraints on.  And if they have to use force, that's what it's going to be."  Pl. Dep. at 58:14-20.  Plaintiff told Holly he would not "let[] them put nothing else on [him] without [his] medication."  Pl. Dep. at 58:20-23.  According to Plaintiff, Holly said "okay" and closed the door.  Pl. Dep. at 58:23-25.  Rehman, Delovic, Holly, and three other federal officers then returned to the room.  Pl. Dep. at 58:23-59:9; *see* R&R at 3-4.

  The parties agree that force was used to affix the remaining restraints, but disagree about what precisely occurred during the incident.  R&R at 3-5.  Plaintiff contends that Delovic put him in a chokehold even though officers were already restraining him, and

Rehman asked, "You want to act like a tough guy?" while squeezing the handcuffs as tightly as they would go, and then did the same thing with the leg shackles, squeezing them so tightly that they cut into Plaintiff's Achilles tendon and caused him to fall to the floor. R&R at 4 (quoting Pl. Dep. at 42:15-16). Defendants contend instead that in response to Plaintiff's noncompliance, Delovic and several federal officers held Plaintiff while Rehman applied a waist chain and leg shackles. R&R at 4. Defendants deny that Delovic placed Plaintiff in a chokehold, while Rehman contends that Plaintiff's restraints were "'not tight at all' and left three fingers' worth of room." R&R at 4 (alteration adopted) (quoting Dkt. 192-3 at 127:2-7).

It is undisputed that once the officers affixed Plaintiff's restraints, they picked him up and carried him to the van to Sing Sing. R&R at 4. Once in the van, Rehman buckled Plaintiff into a seat belt. R&R at 5. Plaintiff then tried to get out of the van. R&R at 5. In response, Rehman and Delovic closed the doors, and "Plaintiff began kicking the doors until [they] were damaged." R&R at 5. Plaintiff states "that he did this because he was having a claustrophobic attack brought on by the excessively tight handcuffs and enclosure within the van." R&R at 5. Rehman then called Sing Sing for a new van to replace the damaged one. R&R at 5. He and Delovic waited for approximately three hours for a replacement van to arrive, leaving Plaintiff restrained inside the van. R&R at 5.

The second van arrived, along with Brooks, Lowe, and three other Sing Sing employees who are nonparties to this suit, including Sergeant Manuel Marmolejos, whose body-worn camera filmed Plaintiff's transportation from the MCC to Sing Sing after Plaintiff was brought out of the original van. R&R at 5. Before Plaintiff was moved to the replacement van, he informed Brooks "that he had claustrophobia, required medication, and that his lack of medication caused his resistance." R&R at 5. He claims that Brooks took photos of him from multiple angles before he was placed in the second van, while Defendants

deny that the photos were ever taken.  R&R at 5.  At some point before Plaintiff was

transferred to the second van, he was briefly inspected by MCC medical staff as part of a

"general policy after the use of force of any type," but the results were "minor injuries[,]

[n]othing that would deter [Plaintiff] from being transported."  Dkt. 191-4 ("Thayer Dep.") at

50:7-22; *see also* Pl. Dep. at 69:18-70:21; Rehman Dep. at 132:5-133:8 ("[B]ecause we had to

force him onto the van, we were advised that he had to get medically assessed prior to leaving

by the feds.").

The parties also disagree about how Plaintiff was moved from one van to the other:

Plaintiff contends that Lowe grabbed his arm, threw him against the wall of the replacement

van, handcuffed him, slammed his head against the window, punched his stomach, and

slapped him, while Brooks and the other officers failed to intervene.  R&R at 6.  Brooks

claims that one of the officers escorted and helped Plaintiff into the van, but was unsure which

officer did so, while Lowe claims that Plaintiff simply "got up and went into the van" after

Brooks spoke to him.  R&R at 6.  Marmolejos's body-worn camera footage, which might

have reconciled these competing accounts, is missing the portion capturing what happened

when Plaintiff was moved into the replacement van, despite DOCCS's obligation to preserve

the video in its entirety.  R&R at 6.

During the drive to Sing Sing, Plaintiff complained that his handcuffs were too tight.

R&R at 6.  Plaintiff contends that he did so repeatedly but was ignored until about 40 minutes

into the trip, when Brooks told Lowe to adjust his handcuffs.  R&R at 6-7.  According to

Plaintiff, Lowe was unable to do so because the handcuffs were so tight, and Plaintiff then

repeatedly told Brooks that his hands were numb.  R&R at 7.  The parties agree that in

response to Plaintiff's complaints, Brooks ordered the driver to pull over, but disagree about

what happened next.  R&R at 7.  Plaintiff contends that Brooks told him: "This is what we're

going to do. . . . I'm going to have the officer loosen the cuffs, take the chain off, so he can

loosen the cuff. . . . If you try anything, I'm going to shoot you."  R&R at 7 (internal quotation

marks omitted) (quoting Pl. Dep. at 75:22-76:3).  Brooks, on the other hand, remembers that

they pulled over, that someone (he does not remember who) loosened Plaintiff's handcuffs,

that Plaintiff thanked him, and that they "got back on the road."  R&R at 7 (citation omitted).

Marmolejos's body-worn camera footage is also missing the portion capturing this incident.

R&R at 7.

Plaintiff arrived at Sing Sing around 10:30 p.m. and Brooks escorted him to the

medical clinic.  R&R at 7.  Nurse Albert Adekanmi ("Adekanmi") assessed him and noted,

among other things, that Plaintiff had a bump on the left side of his head and that while he

complained of pain in his right jaw, it did not appear to be fractured.  R&R at 7.  Plaintiff

contends that he had a swollen eye and markings on his wrists from the handcuffs, but these

are not included in Adekanmi's notes.  R&R at 8.  "Plaintiff complained about numbness in

his hands and palms immediately upon returning to Sing Sing and continued to complain

about these symptoms over the next six months."  R&R at 8.

Following the incident, "Rehman charged Plaintiff with four disciplinary infractions:

(1) property damage, (2) violent conduct, (3) refusing direct orders, and (4) interference."

R&R at 8.  Following a disciplinary proceeding between March 1 and 8, 2017, Plaintiff was

found not guilty, and the hearing officer noted Plaintiff's "'extensive history' of requiring

medication before transport."  R&R at 8.

"In March 2019, Plaintiff was formally diagnosed with 'Anxiety Neurosis.'"  R&R

at 8.  DOCCS continued to recommend Plaintiff's medication prior to travel.  R&R at 8.  Dr.

Bhushan Agharkar, Plaintiff's expert, notes that it his "professional opinion that Mr. Milton

suffers from Panic Disorder which pre-existed the 2017 bus incident and has worsened since,"

and that Plaintiff "now requires daily treatment with psychotropic medication for anxiety."
Dkt. 192-1 at 13; *see also* R&R at 8.

## II.    Procedural History

Plaintiff, then proceeding *pro se*, filed this lawsuit against Rehman, Delovic, and two
John Doe defendants on March 7, 2019, in the Eastern District of New York.  Dkt. 1.  On
March 25, 2019, this case was transferred to the Southern District of New York.  Dkt. 5.  The
case was referred to Magistrate Judge Wang for general pretrial management and dispositive
motions on June 3, 2019.  Dkt. 11.  Plaintiff amended his complaint after he was provided the
identities of the Doe defendants, and the Second Amended Complaint was filed on February
24, 2020.  *See generally* SAC; R&R at 9.  Defendants filed their answer on May 4, 2020.  Dkt.
50.

As the parties proceeded through discovery, Plaintiff sought to obtain Marmolejos's
body-worn camera footage for review.  R&R at 9.  Defendants ultimately produced the
footage to Plaintiff, but critical portions were missing.  R&R at 9.  The parties have stipulated
that despite DOCCS's obligation to preserve the video, it is missing several relevant portions.
Dkt. 147-1.

On August 3, 2022, Magistrate Judge Wang directed the *Pro Se* Office to seek *pro
bono* counsel to assist Plaintiff.  Dkt. 95.  *Pro bono* counsel entered their appearance on
September 19, 2022.  Dkts. 97 to 103.  The case was reassigned to the undersigned on
September 27, 2022.  Dkt. 105.

After discovery concluded, on January 24, 2025, Defendants moved for summary
judgment.  Dkt. 170; Df. RSUF; Dkt. 178 ("MSJ Br.").  That motion is fully briefed.  *See* Dkt.
187 ("MSJ Opp."); Pl. SUF; Df. RSUF; Dkt. 195 ("MSJ Reply").  On May 8, 2025, Plaintiff
filed a motion for sanctions related to the deleted portions of the Marmolejos body-worn

camera footage, seeking an adverse inference on Defendants' motion for summary judgment, as well as fees and costs.  Dkt. 210; Dkt. 211.  That motion is also fully briefed. *See* Dkts. 215; Dkt. 216; Dkt. 217.

On July 31, 2025, Magistrate Judge Wang issued the instant R&R.  *See generally* R&R.  Defendants timely filed objections to the R&R on August 13, 2025.  Dkt. 220 ("Obj.").  Plaintiff responded to those objections on August 27, 2025.  Dkt. 221 ("Resp.").

## III.    The R&R

Magistrate Judge Wang recommended that the motion for summary judgment be denied, and that the motion for sanctions be granted in part and denied in part.  R&R at 29-30.  As for the summary judgment motion, Judge Wang first recommended that summary judgment be denied on Plaintiff's excessive force claims because there were questions of fact about whether Rehman and Delovic knew about Plaintiff's claustrophobia or need for medication, the seriousness of Plaintiff's injuries, and what occurred during his relocation from the first to second vans.  *Id.* at 11-16.  Second, Judge Wang recommended that summary judgment as to Plaintiff's failure to intervene claim against Brooks be denied because there were disputes of fact about Plaintiff's relocation to the second van.  *Id.* at 17-18.  Third, she recommended that summary judgment be denied on Plaintiff's deliberate indifference claim because there were genuine disputes of material fact about whether Defendants knew about Plaintiff's claustrophobia.  *Id.* at 18-21.  Fourth, Judge Wang concluded that the above disputes of material fact should preclude summary judgment on qualified immunity grounds.  *Id.* at 21-23.  Finally, she recommended that Defendants' Eleventh Amendment argument be rejected, explaining that the Court should construe the SAC — filed when Plaintiff was still proceeding *pro se* — as asserting section 1983 claims against the Defendants in their individual capacities, which are not barred by the Eleventh Amendment.  *Id.* at 24.

Magistrate Judge Wang then turned to Plaintiff's motion for spoliation sanctions. R&R at 24. Plaintiff sought "sanctions in the form of (1) an adverse inference against Defendants on their motion for summary judgment *or* an opportunity to present evidence to the jury regarding the missing [footage]; and (2) attorneys' fees and costs." R&R at 24; *see also* Dkt. 211 at 18. She explained that while Plaintiff came close to showing the requisite intent to justify adverse-inference sanctions, granting sanctions at this time would require a credibility assessment about what happened with the video that was best left for the jury. R&R at 26-28. However, she concluded that other sanctions were warranted under Federal Rule of Evidence 37(e)(1), namely, allowing the presentation of evidence regarding the nonpreservation of the video footage to the jury. R&R at 29. Finally, she concluded that Plaintiff should not be awarded attorneys' fees and costs incurred litigating the motion for sanctions. R&R at 29.

## LEGAL STANDARDS

### I.    Review of a Report and Recommendation

With respect to dispositive motions, such as a motion for summary judgment, a district court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see* Fed. R. Civ. P. 72(b)(3). A district court must "determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). "To the extent, however, that the party makes only conclusory or general objections, or simply reiterates the original arguments, the Court will review the Report strictly for clear error." *Harris v. TD Ameritrade Inc.*, 338 F. Supp. 3d 170, 174 (S.D.N.Y. 2018), *aff'd*, 837 F. App'x 841 (2d Cir. 2021) (summary order). "Objections of this sort are frivolous, general and conclusory and would reduce the magistrate's work to something akin to a 'meaningless dress rehearsal.' . . . 'The purpose of

the Federal Magistrates Act was to promote efficiency of the judiciary, not undermine it by allowing parties to relitigate every argument which it presented to the Magistrate Judge.'" *Hobbs v. Knight-Swift Transp. Holdings, Inc.*, No. 21-cv-01421 (JLR), 2025 WL 1577271, at *5 (S.D.N.Y. June 4, 2025) (omission in original) (quoting *N.Y.C. Dist. Council of Carpenters Pension Fund v. Forde*, 341 F. Supp. 3d 334, 336 (S.D.N.Y. 2018)).  "In addition, new arguments and factual assertions cannot properly be raised for the first time in objections to the report and recommendation, and indeed may not be deemed objections at all."  *Piligian v. Icahn Sch. of Med. at Mount Sinai*, 490 F. Supp. 3d 707, 716 (S.D.N.Y. 2020) (internal quotation marks and citation omitted).

By contrast, a magistrate judge's ruling on a nondispositive matter, including sanctions for discovery violations other than terminating sanctions, are "reviewable by the district court under the 'clearly erroneous or contrary to law' standard."  *Joint Stock Co. "Channel One Russ. Worldwide" Inc. v. Infomir LLC*, No. 16-cv-01318 (GBD) (BCM), 2020 WL 1480465, at *3 (S.D.N.Y. Mar. 26, 2020) (citation omitted); *see* Fed. R. Civ. P. 72(a); *Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir. 1990) ("Monetary sanctions pursuant to Rule 37 for noncompliance with discovery orders usually are committed to the discretion of the magistrate [judge], reviewable by the district court under the 'clearly erroneous or contrary to law' standard."); *R.F.M.A.S., Inc. v. So*, 271 F.R.D. 13, 16 n.1 (S.D.N.Y. 2010) ("[T]he Second Circuit has established that a magistrate judge may decide a motion for sanctions for discovery violations under the Federal Rules of Civil Procedure by memorandum and order, rather than by report and recommendation, at least insofar as the magistrate judge's order does not impose terminating sanctions"), *report and recommendation adopted*, 271 F.R.D. 55 (S.D.N.Y. 2010).

## II.    Summary Judgment

Under Federal Rule of Civil Procedure ("Rule") 56, a moving party is entitled to summary judgment if, on any claim or defense, the party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A fact is 'material' only if it 'might affect the outcome of the suit under the governing law.'  A dispute is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Rosen v. UBS Fin. Servs. Inc.*, No. 22-cv-03880 (JLR), 2023 WL 6386919, at *4 (S.D.N.Y. Sept. 29, 2023) (citation omitted) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  "The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact." *JTRE Manhattan Ave. LLC v. Cap. One, N.A.*, No. 21-cv-05714 (JLR), 2024 WL 3227010, at *8 (S.D.N.Y. June 27, 2024).  In ruling on a motion for summary judgment, "the court must view all evidence in the light most favorable to the non-moving party, and resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Id.* (citations omitted) (internal quotation marks omitted).  To defeat a motion for summary judgment, the nonmoving party must advance more than "a scintilla of evidence," *Liberty Lobby*, 477 U.S. at 252, and demonstrate more than "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

## DISCUSSION

Defendants object to the R&R on only one ground, namely, that the Court erred by denying summary judgment on Plaintiff's deliberate indifference claim.  *See generally* Obj. The Court has therefore reviewed Magistrate Judge Wang's R&R recommending denial of summary judgment as to Plaintiff's other claims and her recommendation as to the sanctions

motion under the "clearly erroneous or contrary to law" standard, and adopts her findings and recommendations in their entirety. *See Morgan Art Found. Ltd. v. McKenzie*, No. 18-cv-04438 (JLR) (BCM), 2025 WL 2528301, at *5-6 (S.D.N.Y. Sept. 3, 2025). Moreover, for the reasons that follow, the Court agrees with Magistrate Judge Wang's recommendation that summary judgment should be denied as to Plaintiff's deliberate indifference claim.

"[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment[,] . . . whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care." *Darby v. Greenman*, 14 F.4th 124, 128 (2d Cir. 2021) (second alteration and omission in original) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976)). However, "not every lapse in medical care is a constitutional wrong," *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)), *overturned on other grounds by Kravitz v. Purcell*, 87 F.4th 111 (2d Cir. 2023), and a prison official can be held liable for deliberate indifference "only when two requirements are met," *id.* (quoting *Farmer*, 511 U.S. at 832). First, a plaintiff "must show that, while he was incarcerated, he suffered from a medical condition that is, 'in objective terms, sufficiently serious.'" *Mallet v. N.Y. State Dep't of Corrs. & Cmty. Supervision*, 126 F.4th 125, 132 (2d Cir. 2025) (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)). Second, a plaintiff must "establish that [defendants] acted with a 'sufficiently culpable state of mind.'" *Id.* (quoting *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994)).

Defendants object to the R&R's conclusion that there were material questions of fact about the subjective prong of Plaintiff's deliberate indifference claim. Obj. at 2-5. Specifically, Defendants argue that they were not deliberately indifferent based on their

refusal to follow up with MCC staff in response to Plaintiff alerting them that he needed medication, since they reasonably relied on MCC staff to provide medication, *id.* at 3-4, 5, and that they were not deliberately indifferent based on their failure to medicate Plaintiff during the transport to Sing Sing, as they were not medical providers and did not have medication to provide Plaintiff, *id.* at 4.  Though these objections largely repeat the arguments made in Defendants' motion for summary judgment, *see* Dkts. 178, 195, the Court has reviewed them *de novo* in an abundance of caution.  For the reasons that follow, the Court overrules Defendants' objections.

First, Magistrate Judge Wang properly found that a jury could find that Defendants were deliberately indifferent to a substantial risk of harm to Plaintiff when they restrained him, confined him to the first van, and then proceeded to transport him in the second van without taking any step to confirm whether Plaintiff needed medication, despite Plaintiff repeatedly telling them that he had claustrophobia and required medication.  A correction officer's failure to take steps to secure medical care can constitute deliberate indifference, as can an officer's decision to ignore repeated requests for medication.  *See, e.g.*, *Archer v. Dutcher*, 733 F.2d 14, 16 (2d Cir. 1984) (reversing grant of summary judgment where plaintiff claimed that she "asked many matrons and correction officers in the prison to try to get [her] to the hospital" over many days and they refused, and emphasizing that "if defendants did decide to delay emergency medical aid — even for 'only' five hours — in order to make [plaintiff] suffer, surely a claim would be stated under *Estelle*"); *Bright v. Annucci*, No. 18-cv-11111 (NSR), 2024 WL 3012043, at *8 (S.D.N.Y. June 13, 2024) ("[C]ausing [plaintiff] to wait for prolonged periods before receiving recommended medical treatment . . . can — according to the facts alleged here — be understood as entailing deliberate indifference on the part of [d]efendants." (omission in original) (internal quotation

marks omitted)).  *Ennis v. Davies*, No. 87-cv-01465 (LMM), 1990 WL 121527 (S.D.N.Y.

Aug. 15, 1990), *aff'd*, 992 F.3d 320 (2d Cir. 1993) (unpublished table opinion), is persuasive.

In that case, the plaintiff claimed that he began to suffer an asthma attack in his cell and asked

correction officers for his asthma medication, but they refused to get it for him.  *Id.* at *3.  The

court concluded that a jury could reasonably find that the defendant-officers were deliberately

indifferent to a serious medical need, since "[n]othing in the record indicate[d] that

defendants . . . , without reference to medical personnel, would have been able to determine

that [plaintiff] had no real need for the medication."  *Id.*  Viewing the evidence in the light

most favorable to Plaintiff, a reasonable jury could find that Defendants ignored Plaintiff's

requests for medication and did not take reasonable follow-up steps, such as speaking with

medical staff, to determine whether Plaintiff needed medication before forcing him into the

transport vans, confining him in the first transport van for three hours, and then forcing him

into a second van.  *See* Pl. Dep. at 57:18-65:7; R&R at 20-21; *see, e.g.*, *Ennis*, 1990 WL

121527, at *3; *Garcia v. Univ. of Conn. Health Care Ctr.*, No. 16-cv-00852, 2018 WL

5830840, at *11 (D. Conn. Nov. 7, 2018) (denying summary judgment because "a reasonable

jury could find that the defendants," who included corrections officers, "recklessly

disregarded an excessive risk to [plaintiff]'s health and safety when they ignored his requests

for medication and instead placed [him] on in-cell restraints"); *Young v. Choinski*, 15 F. Supp.

3d 172, 186 (D. Conn. 2014) (denying summary judgment where questions of fact remained

about whether the officer took actions to obtain mental health assistance for plaintiff who told

the officer he was feeling suicidal and asked to see mental health unit).

     Defendants contend that even if they were aware of Plaintiff's request for medication,

they were not deliberately indifferent to his needs because they reasonably relied on the

presence of MCC staff and medical staff to provide medication.  Obj. at 3-5.  This argument is

unpersuasive for several reasons.  As an initial matter, Defendants do not cite any case

suggesting that corrections officers are absolved of liability as a matter of law for denying or

delaying access to requested medication because medical staff from another correctional

facility were responsible for providing the medication, or because a staff member from that

other correctional facility were also present.[1]  *Farmer v. Brennan*, the only case Defendants

do cite in support of their argument, *see* Obj. at 5, stands only for the proposition that "prison

officials who actually knew of a substantial risk to inmate health or safety may be found free

from liability if they responded *reasonably* to the risk, even if the harm ultimately was not

averted."  511 U.S. at 844 (emphasis added).  But there is at the very least a question of fact

about whether Defendants reasonably responded to the risk of harm.  When Plaintiff first

alerted Rehman and Delovic of his need for medication, they proceeded to handcuff and

restrain him without speaking with medical staff.  Pl. Dep. 57:24-59:9; R&R at 4-5.  While

Holly, a lieutenant at MCC, came to the room where Plaintiff was being strip-frisked, the

record does not reflect that Holly was medical personnel that would have been able to assess

or confirm Plaintiff's need for medication, or even that "Plaintiff advised MCC Lt. Holly of

his need for medication in the presence of Defendants Rehman and Delovic." Obj. at 3; *see* Pl.

Dep. at 57:24-58:25 (testifying that Rehman and Delovic left the room before Holly came to

the door to speak with Plaintiff).

---

[1] While some courts in this district have explained that "prison administrator[s] [are]
permitted to rely upon and be guided by the opinions of medical personnel concerning the
proper course of treatment administered to prisoners," *Joyner v. Greiner*, 195 F. Supp. 2d 500,
506 (S.D.N.Y. 2002), that rule applies to (1) factually distinguishable cases, since Defendants
here are not prison administrators, and (2) factually distinguishable claims, since the
aforementioned rule applies to claims involving "[a] defendant's denial of an administrative
grievance or a refusal to override the medical advice of medical personnel," *Battle v.
Recktenwald*, No. 14-cv-02738 (VB), 2016 WL 698145, at *10 (S.D.N.Y. Feb. 19, 2016).

The fact that MCC medical staff inspected Plaintiff before he was moved to the second van and taken to Sing Sing would not prevent a jury from finding that Defendants were deliberately indifferent.  Nonparty Officer Thayer, not Defendants, took steps to summon medical staff before transferring Plaintiff to the second van so that he could be evaluated for injuries before proceeding with his transport.  *See* Thayer Dep. at 50:7-22 (nonparty Officer Thayer testifying that he ordered the medical assessment because it was a "general policy after the use of force of any type," but that the results were "minor injuries[,] [n]othing that would deter the inmate from being transported").  The record reflects that Defendants took no steps to alert the MCC medical staff who evaluated Plaintiff about Plaintiff's medication requests, to find out the result of the medical assessment, or to discover whether Plaintiff received any medication for his claustrophobia.  *See, e.g.*, Rehman Dep. 134:23-25 ("Q: Okay.  So what was the result of that medical assessment?  A: I have no clue."); Dkt. 191-5 at  179:18-181:5 (Delovic testifying that he "wasn't close to hearing what the nurse with the medical [*sic*] speaking to him about," didn't know if medical staff "administer[ed] any medications," and that "the medical staff [did not] say anything to [him] or the federal officers after they finished their exam").  Viewing this evidence in the light most favorable to Plaintiff, a reasonable jury could conclude that Defendants "intentionally refused to take action to summon mental health or medical personnel to evaluate and treat" Plaintiff by failing inform medical officials of his medication request at any point, demonstrating a disregard for the substantial risk to Plaintiff.  *Young*, 15 F. Supp. 3d at 185.[2]  As a result, Magistrate Judge Wang correctly concluded that

---

[2] Defendants also claim that they were "aware" that Plaintiff had already advised MCC staff about his need for medication and thus did not need to inform anyone about his request, since MCC staff already knew.  Obj. at 5.  But Defendants do not cite any record evidence supporting their claim that they were aware MCC staff knew about Plaintiff's need for medication, *see id.*, which is unsurprising given that at least two of the Defendants insist that Plaintiff never told them he needed to be medicated, R&R at 4.

even if MCC medical staff, not Defendants, had the ultimate responsibility to provide Plaintiff's medication, "Defendants may have acted with reckless disregard to the risk of harm to Plaintiff" by "cho[osing] not to follow up with MCC staff to retrieve medication," despite Plaintiff's repeated requests and violent reaction to confinement.  R&R at 20-21.

Defendants' final objection is also unpersuasive and misconstrues the R&R. Defendants argue that the R&R erred in suggesting that "a jury could find that the Defendants were deliberately indifferent because they were either capable of medicating the Plaintiff themselves and failed to do so, or had a duty to the Plaintiff to exit the highway and go to a hospital to seek medication for him," Obj. at 4 (citing R&R at 21 n.9).  But the R&R suggested no such thing.  Magistrate Judge Wang explained that to prevail at trial, Plaintiff would have to show that Defendants were "aware of facts from which the inference could be drawn *that a substantial risk of serious harm exists*, and [they] must also draw the inference," but that the issue of Defendants' awareness was an issue for the jury.  R&R at 21 n.9 (quoting *Farmer*, 511 U.S. at 837).  The R&R noted that a reasonable jury could find that Plaintiff satisfied the subjective prong if they concluded either that "Plaintiff informed all four Defendants of his condition, and that knowledge of the condition itself caused Defendants to draw an inference they were creating risk of serious harm," or that "knowledge of Plaintiff's violent reaction to being constrained alerted Defendants that continuing the transport without medicating Plaintiff created a risk of serious harm."  *Id.*  Thus, she concluded, "Defendants' lack of medical expertise is simply another piece of evidence to present before a jury; it does not definitively foreclose the *mens rea* issue as a matter of law."  *Id.*; *see, e.g.*, *Ennis v. Davies*, No. 87-cv-01465 (LMM), 1991 WL 29172, at *1 (S.D.N.Y. Feb. 25, 1991) ("The fact that corrections officers are not authorized to administer medication is not, on the facts presented, and on a motion for summary judgment, dispositive.").  Magistrate Judge Wang

nowhere suggested that Defendants "had a duty to the Plaintiff to exit the highway and to go to a hospital," or found that Defendants were "capable of medicating the Plaintiff themselves and failed to do so." Obj. at 4. Rather, the R&R explained that a reasonable jury could have concluded that Defendants knew that continuing the transport without medicating Plaintiff after Plaintiff had a violent reaction to being constrained — both when handcuffed and in the first van — created a risk of serious harm to Plaintiff. Thus, the Court does not find that Magistrate Judge Wang erred in recommending the denial of summary judgment as to Plaintiff's deliberate indifference claim.[3]

## CONCLUSION

For the foregoing reasons, the Court adopts the R&R in full and overrules Defendants' objections. Defendants' motion for summary judgment is DENIED, and Plaintiff's motion for sanctions is GRANTED in part and DENIED in part. The Clerk of Court is respectfully directed to terminate the motions at Dkts. 170 and 210.

The parties shall file their joint pretrial order and other pretrial submissions by **October 10, 2025**. A final pretrial conference will be held on **November 10, 2025 at 10:00 a.m.** and a jury trial will be held on **November 17, 2025**.

Dated: September 11, 2025
      New York, New York

                                               SO ORDERED.

                                               *Jennifer Rochon*

                                               JENNIFER L. ROCHON
                                             United States District Judge

---

[3] Defendants also incorrectly claim that "the only issue Plaintiff had on the trip to Sing Sing . . . was that his handcuffs were too tight." Obj. at 4. As Plaintiff points out, "[t]his assertion is directly contradicted by copious evidence, including Defendants' own statements" that Plaintiff was "screaming" and repeatedly saying he was claustrophobic during the drive to Sing Sing. Resp. at 12 n.2 (citation omitted).